IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AUDREY ELAINE DUNBAR | * | |
| | * | |
| v. | * | Civil Case No. JFM-13-2091 |
| | * | |
| COMMISSIONER, SOCIAL SECURITY | * | |
| | * | |

*************

**REPORT AND RECOMMENDATIONS**

Pursuant to Standing Order 2014-01, the above-referenced case was referred to me to review the parties' cross-motions for summary judgment and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' motions, and Ms. Dunbar's reply. ECF Nos. 13, 15, 18. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons set forth below, I recommend that both motions be denied, and that the case be remanded to the Commissioner for further proceedings in accordance with this Report and Recommendations.

Ms. Dunbar applied for Disability Insurance Benefits on September 26, 2007, alleging a disability onset date of July 21, 2007.[1] (Tr. 144-47). Her claims were denied initially on February 22, 2008, and on reconsideration on August 11, 2008. (Tr. 77, 106-10). An Administrative Law Judge ("ALJ") held a hearing on June 10, 2009, (Tr. 25-75), and subsequently denied benefits to Ms. Dunbar in a written opinion dated August 13, 2009. (Tr. 10-24). Ms. Dunbar appealed that decision to this Court, which remanded the case by consent order on January 5, 2012. (Tr. 866). An ALJ held a second hearing on December 11, 2012, (Tr. 801-

---

[1] Ms. Dunbar's date last insured is December 31, 2007, and thus she has a relatively narrow window, from July 21 to December 31, 2007, in which she must prove herself disabled. (Tr. 781).

844), and subsequently issued a decision again denying benefits on March 22, 2013. (Tr. 781-800). Ms. Dunbar did not timely file exceptions with the Appeals Council, (Tr. 771-72), making the ALJ's 2013 decision the final, reviewable decision of the agency. Ms. Dunbar then filed the instant appeal. [ECF No. 1].

The ALJ found that Ms. Dunbar suffered from the severe impairments of rheumatoid arthritis, diabetes mellitus, hypertension, and obesity. (Tr. 784). The ALJ found that, despite those impairments, Ms. Dunbar retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except the claimant was limited to standing/walking no more than two hours in an eight-hour workday, sitting no more than six hours in an eight-hour workday, lifting no more than 20 pounds occasionally and 10 pounds frequently, no climbing ladders, ropes, or scaffolds, occasional balancing, stooping, kneeling, crouching, and crawling, limited pushing/pulling with the upper extremities and reaching overhead, must avoid exposure to extreme cold, vibration and hazards, is able to perform frequent, but not constant, handling, fingering, and feeling, and is further limited to unskilled work due to medication side effects.

(Tr. 786). After considering testimony from a vocational expert ("VE"), the ALJ determined that Ms. Dunbar would be capable of performing work existing in the national economy, and that she was therefore not disabled. (Tr. 792-93).

Ms. Dunbar disagrees with the ALJ's analysis. She raises several arguments in support of her appeal: (1) that the ALJ erred in her evaluation of the report from medical expert Dr. Lebeau; (2) that the ALJ failed to comply with various dictates in the Remand Order; (3) that the ALJ did not appropriately consider functional limitations resulting from arthritis; (4) that the ALJ failed to evaluate an opinion from the Adult Medicine Clinic; (5) that the ALJ erred in finding that her irritable bowel syndrome and headaches were not severe; and (6) that the ALJ assigned inadequate weight to the opinions of her treating physicians, Drs. Yezdani and Schwartz. Although many of Ms. Dunbar's arguments lack merit, I concur that the ALJ's reliance on Dr. Lebeau's opinion was problematic in light of the failure to provide an adequate

explanation for discounting the opinions of the treating physicians, particularly as to Ms. Dunbar's ability to engage in frequent handling, fingering, and feeling.  I therefore recommend that the case be remanded for further consideration.  In so recommending, I express no opinion as to whether the ALJ's ultimate conclusion that Ms. Dunbar is not entitled to benefits is correct or incorrect.

Turning briefly to the unsuccessful contentions, Ms. Dunbar contends that the ALJ did not adopt Dr. Lebeau's finding that she could never balance.  Pl. Mot. 24-25.  An ALJ need not adopt every finding in an opinion, even if the ALJ assigns that opinion "significant weight." Moreover, even if the ALJ erred in failing to impose a balancing restriction, the error would be harmless because none of the representative jobs identified by the VE require balancing.  *See* Def. Mot. Ex. A.

Ms. Dunbar further contends that the ALJ did not comply with the Remand Order because the RFC assessment and hypothetical question posed to the VE remained the same in 2009 and in 2012/2013.  Pl. Mot. 28.  However, the Remand Order simply instructed the ALJ to consider certain facts and circumstances, but did not mandate any particular result or change at the conclusion of that consideration.  (Tr. 869-70).  Accordingly, I cannot find inherent error by virtue of failure to comply with the Remand Order.

Ms. Dunbar's Step Two argument is equally unpersuasive.  She contends that the ALJ should have found her gastrointestinal problems and headaches to be severe at Step Two. Pl. Mot. 34-39.  An impairment is considered "severe" if it significantly limits the claimant's ability to work.  *See* 20 C.F .R. § 404.1521(a). The claimant bears the burden of proving that her impairment is severe.  *Johnson v. Astrue*, No. PWG–10–3139, 2012 WL 203397, at *2 (D. Md. Jan. 23, 2012) (citing *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995)). The ALJ acknowledged that Ms. Dunbar suffered from intermittent gastrointestinal problems but

determined that "these symptoms did not occur with such frequency or severity as to cause more than minimal functional limitations." (Tr. 785). Similarly, with respect to Ms. Dunbar's headaches, the ALJ reviewed the objective studies and treatment records, and concluded that the evidence did not substantiate "such frequency or severity as to affect her every day functioning." *Id.* Even if the ALJ erred in her evaluation of Ms. Dunbar's gastrointestinal impairments or headaches at Step Two, such error would be harmless. Because Ms. Dunbar made the threshold showing that other disorders constituted severe impairments, the ALJ continued with the sequential evaluation process and properly considered all of the impairments, both severe and non-severe, that significantly impacted Ms. Dunbar's ability to work. *See* 20 C.F.R. § 404.1523; (Tr. 786-89). Any Step Two error, then, does not necessitate remand.

However, the ALJ's opinion contains other errors that require the case to be remanded to the Commissioner. The problems with the ALJ's analysis result, in part, from deficiencies in the analysis provided by the medical expert, Dr. Lebeau. While the ALJ assigned significant weight to Dr. Lebeau's analysis in part because he "is familiar with the disability determination requirements of the Social Security Act," Dr. Lebeau's report does not evidence such familiarity. First, Dr. Lebeau only considered whether Ms. Dunbar met Listing 1.02, which addresses major dysfunction of a joint. Dr. Lebeau did not consider Listing 14.09 (inflammatory arthritis), which calls into question his facility with disability determination requirments. *See* 20 C.F.R. Subpt. P, App. 1 § 1.00B(1) ("The provisions of 1.02 and 1.03 notwithstanding, inflammatory arthritis is evaluated under 14.09."). Second, Dr. Lebeau provides no substantiation for his conclusory assertion that Ms. Dunbar is capable of handling, fingering, feeling, pushing, and pulling continuously. (Tr. 1112). That unsupported determination is completely contradicted by the opinions of three of Ms. Dunbar's treating physicians, Drs. Schwartz, Wahida, and Yezdani, all of whom opined that Ms. Dunbar could never or could very rarely engage in handling, fingering,

feeling, pushing or pulling. (Tr. 695, 697, 702).

Despite these flaws in Dr. Lebeau's opinion, the ALJ assigned "significant weight" to Dr. Lebeau's opinion and less than controlling weight to the opinions of Drs. Schwartz and Yezdani. (Tr. 790-91). The reasons the ALJ gave for the limited assignment of weight to the treating physicians were that (1) they were not well supported by the clinical or objective findings, (2) they were inconsistent with the physicians' contemporaneous treatment records, and (3) the opinions "appear to be based primarily on the claimant's subjective allegations." (Tr. 790). In the ALJ's 2009 opinion in this case, she conceded that the treatment notes from Drs. Schwartz and Yezdani are largely illegible. (Tr. 21). The ALJ does not explain how, by the time of her second opinion in 2013, she is able to ascertain that the conclusions in the physicians' opinion letters are "inconsistent with their detailed, contemporaneous treatment records." *See* (Tr. 790). In fact, I concur with the ALJ's original assessment that the treatment notes from both Dr. Yezdani and Dr. Schwartz, for the most part, cannot be deciphered. In one opinion letter, Dr. Schwartz expressly states that his responses were filled out in conversations with Ms. Dunbar. (Tr. 693). However, there is no way of knowing whether the other opinion letters from both doctors were premised on their clinical observations or simply on Ms. Dunbar's own responses.

One of the few notations that can be read consistently in Dr. Schwartz's treatment notes is his notation that Ms. Dunbar suffered "no synovitis" during the relevant time frame. *See, e.g.,* (Tr. 407). While that notation appears to corroborate the ALJ's opinion regarding a lack of clinical or objective findings to support significant functional limitations, Dr. Schwartz, the treating rheumatologist, suggested in his November 14, 2008 letter that the symptoms of rheumatoid arthritis could be persistent and disabling despite the lack of objective changes. (Tr. 675-676). Dr. Lebeau, who practices in cardiology and internal medicine, might not possess the requisite understanding of rheumatology to know whether Ms. Dunbar's symptoms and

5

complaints could be credible despite the lack of synovitis or X-ray evidence of joint inflammation. On the other hand, Dr. Schwartz's report could simply be an effort to obtain disability benefits for his client in a circumstance in which disability is unwarranted. Certainly, without either further explanation of the basis for her conclusions or some corroboration from qualified medical sources, the ALJ is not the appropriate party to reject the clearly expressed opinion of the treating rheumatologist.

On remand, to facilitate an effective review of her conclusions, the ALJ should address whether Dr. Schwartz's opinions, which suggest that Ms. Dunbar's ability to use her hands is greatly limited despite the relatively sparse objective findings, are valid or invalid from the perspective of a rheumatologist. An opinion from a medical expert qualified in rheumatology could be beneficial in assessing that view, but is not required if the ALJ can corroborate her view with other specific and substantial evidence of record.

CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1. the Court DENY Defendant's Motion for Summary Judgment (ECF No. 15);

2. the Court DENY Plaintiff's Motion for Summary Judgment (ECF No. 13); and

3. the Court order the Clerk to REMAND the case to the Commissioner for further proceedings and to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b)(2) and Local Rule 301.5.b.


Dated:  September 4, 2014                                 /s/
                                                    Stephanie A. Gallagher
                                                    United States Magistrate Judge